UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THOMAS RACHFORD, et al.,

    Plaintiffs,

    v.

AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, et al.,

    Defendants.

_____/

No. C 03-3618 PJH

**ORDER GRANTING ALPA'S MOTION TO DISMISS**

    Before the court is the motion of defendant Air Line Pilots Association, International ("ALPA") for an order dismissing the claim asserted against it in the fourth amended complaint, or in the alternative, motion for summary judgment. Having read the parties' papers and carefully considered their arguments, and good cause appearing, the court hereby GRANTS the motion.

## BACKGROUND

    This is a proposed class action filed by individuals formerly employed as pilots and flight engineers by defendant Emery Worldwide Airlines ("EWA" or "Emery"). Also named as defendants are Emery Air Freight Corp. d/b/a Emery Air Freight Forwarding, Inc. a/k/a Menlo Worldwide Forwarding, Inc. ("EWW"); CNF, Inc. ("CNF"); and ALPA. At the time of the events alleged in the complaint, CNF was the parent company of EWA and EWW. (EWA, EWW, and CNF are referred to as "the corporate defendants.") ALPA was the exclusive bargaining representative for the EWA pilots.

On September 28, 2000, the pilots and flight engineers employed by EWA ("the EWA pilots" or "the Emery pilots") entered into a collective bargaining agreement ("CBA") with EWA.

In August 2001, after finding numerous safety violations, the FAA shut down EWA's operation on a temporary basis. Plaintiffs claim that CNF and EWW caused the grounding of EWA by failing to adequately fund the maintenance costs of EWA's fleet of aircraft. Plaintiffs claim that CNF, EWW, and EWA declined to bring EWA into FAA compliance, with the result that the FAA ordered a permanent shut-down in December 2001.

In January 2002, ALPA filed a grievance against EWA ("the shut-down grievance") on behalf of the Emery pilots, asserting that the cessation of flight operations violated the CBA.

On January 16, 2002, ALPA, acting pursuant to its Constitution and By-Laws, imposed a custodianship on the EWA Master Executive Council ("EWA MEC").[1] The custodian appointed by ALPA was Captain Jeffrey Haddock, a pilot who, according to plaintiffs, was not the choice of the Emery pilots when they voted to choose their representatives on the Emery MEC. Plaintiffs contend that ALPA should have appointed one of the Emery pilots' chosen representatives instead of Captain Haddock.

On March 14, 2003, Thomas Rachford and other former EWA crew members filed the complaint in Rachford v. ALPA, C-03-1109 PJH ("Rachford I" against ALPA and EWA, seeking declaratory and injunctive relief and alleging a right to self-representation in proceedings on ALPA's grievances related to the permanent shut-down of EWA. Plaintiffs also asserted that the proper forum for resolving those grievances was the court, not arbitration. Rachford I was dismissed in December 2005.

 On August 4, 2003, Thomas Rachford and 269 other individual plaintiffs filed the present action – Rachford II. In the original complaint, plaintiffs alleged that ALPA, EWA,

---

[1] ALPA's Constitution and By-Laws establish "Master Executive Councils" ("MECs"), which are coordinating and governing organs for members employed by one airline. ALPA imposed the custodianship or trusteeship in accordance with 29 U.S.C. § 462, and pursuant to its Constitution and By-Laws, as discussed below.

2

and EWW had improperly settled grievances filed by ALPA regarding the permanent shut-down.

On November 25, 2003, four of the original plaintiffs – Thomas Rachford, Jon del Turco, Wendy Albright, and Mark Luthi – filed a first amended complaint ("FAC") as a proposed class action, against ALPA, EWA, EWW, and CNF.  The FAC asserted a claim of breach of the duty of fair representation, against ALPA, asserting that ALPA had improperly entered into a settlement agreement with EWA regarding the shut-down grievance, plus three contract claims against the corporate defendants.

On January 26, 2004, ALPA filed an answer and counterclaims for breach of fiduciary duty, negligence, accounting, restitution, and breach of contract against Wendy Albright and Mark Luthi.  On March 23, 2004, plaintiffs filed a motion for leave to filed a second amended complaint ("SAC").  On March 24, 2004, CNR and EWW filed a motion to dismiss the FAC.

On May 28, 2004, the court issued a written order denying EWA's motion to dismiss and EWW/CNF's motion to dismiss, and granting plaintiffs' motion for leave to file a SAC. One basis for denying the motions to dismiss was that there was a disputed issue of fact with regard to whether the parties had settled the shut-down grievance during the February 2001 mediation session.

On June 30, 2004, plaintiffs Rachford, del Turco, Albright, and Luthi filed the SAC. In the SAC, plaintiffs alleged a claim of breach of the duty of fair representation, against ALPA, asserting that ALPA had improperly entered into a settlement of the shut-down grievance with EWA, plus three contract claims against the corporate defendants.

On September 30, 2004, and October 1, 2004, the court conducted an evidentiary hearing on the question whether EWA and ALPA had settled the shut-down grievance during the February 2004 mediation.

On October 4, 2004, CNF entered into a stock purchase agreement with United Parcel Service, Inc., pursuant to which CNF sold its interest in EWW to UPS.

On June 15, 2005, the court issued findings of fact and conclusions of law following

the evidentiary hearing, and concluded that the parties had not reached a settlement of the shut-down grievance.

On September 9, 2005, the court dismissed the first cause of action against ALPA and the contract claim asserted against EWW and EWA as moot, in view of the court's having found that the parties had not settled the shut-down grievance in the February 2004 mediation. This ruling left in place the three contract claims asserted against CNF.

On October 24, 2005, the four named plaintiffs filed a motion for leave to file a third amended complaint ("TAC"). The motion was granted, and the TAC was filed on December 15, 2005. In the TAC, plaintiffs alleged one cause of action against ALPA, for improper imposition and maintenance of a trusteeship in violation of Title III of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 402, 462, 464. They also asserted nine causes of action against one or more of the corporate defendants. On December 28, 2005, ALPA filed a motion to dismiss the TAC, or in the alternative, for summary judgment.

On January 24, 2006, pursuant to stipulation, the four named plaintiffs filed a fourth amended complaint ("4thAC"). The 4thAC alleges eleven causes of action. As in the TAC, the only claim asserted against ALPA is the first cause of action for improper imposition and maintenance of a trusteeship – specifically, alleging that the custodianship of the EWA MEC is improper under Title III of LMRDA.

Plaintiffs allege by appointing a custodian whom 89 percent of the EWA MEC did not support, and for purposes other than those authorized by 29 U.S.C. § 462, and by subsequently refusing to "relinquish control of the MEC back to the elected representatives of the members," ALPA created an actionable improper trusteeship under 29 U.S.C. § 464 and 29 U.S.C. § 402(c). Plaintiffs claim that ALPA acted in bad faith by imposing and maintaining this "improper trusteeship." Plaintiffs allege further that as the elected representatives of the EWA MEC, they are presently willing and able to resume control of the MEC, and, if necessary, arbitrate the shut-down grievance against EWA. They assert that ALPA's refusal to allow them to resume control of the MEC, and resistance to allowing

4

plaintiffs and the members of the proposed class to exercise their Burley rights[2] has created a hostile environment that impairs the ability of the System Board to fairly adjudicate the grievance.

Plaintiffs bring the first cause of action under 29 U.S.C. § 464, which provides authority for bringing a "civil action for enforcement" in connection with any alleged violation by a labor union of the provisions of 29 U.S.C. §§ 462, et seq., relating to the imposition of trusteeships.  They seek injunctive relief, "ordering dissolution of the trusteeship-custodianship, stay of the System Board Arbitration of the Grievance, and whatever other relief justice requires."

ALPA now seeks an order dismissing the first cause of action for lack of subject matter jurisdiction and for failure to state a claim.  The parties stipulated that ALPA's motion to dismiss the TAC would be considered a motion to dismiss the 4thAC.

## DISCUSSION

A. Legal Standards

    1. Subject matter jurisdiction

Subject matter jurisdiction is fundamental and cannot be waived. Billingsly v. C.I.R., 868 F.2d 1081, 1085 (9th Cir. 1989). The court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction. Id. Federal courts can adjudicate only those cases which the Constitution and Congress authorize them to adjudicate – those involving diversity of citizenship or a federal question, or those to which the United States is a party. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994).

When presented with a Rule 12(b)(1) motion, the plaintiff bears the burden of demonstrating that subject matter jurisdiction exists. See, e.g., Tosco Corp. v. Communities for a Better Env't, 236 F.3d 495, 499 (9th Cir. 2001). The defendant may either challenge jurisdiction on the face of the complaint or provide extrinsic evidence

---

[2] Elgin, J. & E. Ry. Co. v. Burley, 325 U.S. 711 (1945) (" Burley") (union cannot settle grievance under Railway Labor Act without consent of individual employees).

demonstrating lack of jurisdiction on the facts of the case. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).

### 2. Failure to state a claim

A court should dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim only where it appears beyond doubt that plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Pillsbury, Madison & Sutro v. Lerner, 31 F.3d 924, 928 (9th Cir. 1994). Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Smith v. Jackson, 84 F.3d 1213, 1217 (9th Cir. 1996). Conclusory allegations of law and unwarranted inferences, however, are insufficient to defeat a motion to dismiss. Associated Gen. Contractors v. Metro. Water Dist. of S. Cal., 159 F.3d 1178, 1181 (9th Cir. 1998).

Motions to dismiss for failure to state a claim are disfavored, see Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997), and 12(b)(6) dismissals are proper only in "extraordinary" cases. United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir. 1981). In dismissing for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleadings was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995) (citations omitted).

### 3. Summary judgment

Summary judgment is appropriate when there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are those that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. The court may not weigh the evidence, and is required to view the evidence in the light

6

1 most favorable to the nonmoving party. Id.

2 A party seeking summary judgment bears the initial burden of informing the court of
3 the basis for its motion, and of identifying those portions of the pleadings and discovery
4 responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp.
5 v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof
6 at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other
7 than for the moving party. On an issue where the nonmoving party will bear the burden of
8 proof at trial, the moving party can prevail merely by pointing out to the district court that
9 there is an absence of evidence to support the nonmoving party's case. Id. If the moving
10 party meets its initial burden, the opposing party must then set forth specific facts showing
11 that there is some genuine issue for trial in order to defeat the motion. See   Fed. R. Civ.
12 P. 56(e); Anderson, 477 U.S. at 250.

13 "To show the existence of a 'genuine' issue, . . . [a plaintiff] must produce at least
14 some significant probative evidence tending to support the complaint." Smolen v. Deloitte,
15 Haskins & Sells, 921 F.2d 959, 963 (9th Cir. 1990) (quotations omitted). Regardless of
16 whether plaintiff or defendant is the moving party, each party must "establish the existence
17 of the elements essential to [its] case, and on which [it] will bear the burden of proof at
18 trial." Celotex, 477 U.S. at 322.

19 B.   Title III of the LMRDA

20 Title III of the LMRDA governs the circumstances under which a labor organization
21 may establish a trusteeship over a subordinate body. A trusteeship is defined as "any
22 receivership, trusteeship, or other method of supervision or control whereby a labor
23 organization suspends the autonomy otherwise available to a subordinate body under its
24 constitution and bylaws." 29 U.S.C. § 402(h).

25 Section 462 of Title III describes the manner in which a trusteeship may be
26 established:

27
28 > Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws

7

> of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization.

29 U.S.C. § 462.

The establishment or maintenance of a trusteeship may be challenged by a civil action. 29 U.S.C. § 464(a). This statute includes a burden-shifting provision. A trusteeship established in conformity with the procedural requirements of a labor organization's constitution and bylaws and "authorized or ratified after a fair hearing either before the executive board or before such other body as may be provided in accordance with its constitution or bylaws" is presumed to be valid for the first 18 months after it is established. 29 U.S.C. § 464(c). Following this period, trusteeships are "presumed invalid" and should be discontinued "unless the labor organization . . . show[s] by clear and convincing proof that the continuation of the trusteeship is necessary for the purpose allowable" under § 462 of Title III. Id. Where a labor organization proffers evidence that the trusteeship is for a permissible purpose, the civil action should be dismissed. Id.

C.    ALPA's Constitution and By-Laws

ALPA's Constitution and By-Laws give ALPA's Executive Council authority to suspend self-governance of an MEC in two ways: by establishing a "trusteeship," and by instituting a "custodianship." Both forms may qualify as "trusteeships" under the LMRDA, but their purposes are different, and they are clearly distinguished by ALPA's Constitution and By-Laws. A "trusteeship" of an MEC is governed by Article XIX of ALPA's Constitution and By-Laws, and is appropriate when ALPA has reason to believe that an MEC is mismanaging its finances, or is refusing its duties as a collective bargaining representative. After a period of trusteeship to correct these problems, the MEC can be returned to democratic governance. ALPA Const., Art. XIX.

By contrast, Article XXI of the ALPA Constitution and By-Laws authorizes the establishment of a "custodianship" of an MEC in order to provide representation to pilots employed by an airline that ceases all or substantially all operations, in order to wind up the

affairs of those pilots or former employees of the defunct airline. Article XXI provides that the President of ALPA, "with the concurrent approval of the Executive Council, is authorized to take emergency action to provide representation for the pilots in the service of any airline which interrupts all or substantially all operations." ALPA Const., Art. XXI, § 1. Where the President of ALPA determines that emergency action prior to a hearing is not warranted, the President may cause the Executive Council to be convened and conduct a hearing prior to establishing a custodianship. ALPA Const., Art. XXI, § 3.

The President is also authorized to appoint one or more custodian representatives, "who shall function as representatives in place of the last Master Executive Council and Local Executive Councils on the airline and their officers." ALPA Const., Art. XXI, § 2. The number of such custodian representatives and their duties "shall be determined by the President and may vary from time to time as circumstances may require. ALPA Const., Art. XXI, § 2.

Under the ALPA Constitution and By-Laws, a custodianship is particularly necessary in the case of an airline, such as EWA, that ceases all operations and permanently furloughs all its employees, because an ALPA member becomes an "inactive" member automatically when he/she is placed on an involuntary furlough. ALPA Const., Art. II, § 3. All EWA pilots and flight engineers were automatically placed in inactive status when they were furloughed by EWA.

Under ALPA's Constitution and By-Laws, only active members in good standing may vote or hold elective office within ALPA. ALPA Const., Art. IV, §§ 1, 5, 10. "Inactive" members such as the furloughed EWA flight crew members are ineligible to vote or hold MEC office. Id. Thus, the only method of providing continuing representation to ALPA members who have been permanently furloughed is through a custodianship.

D. ALPA's Motion

ALPA argues that the first cause of action, alleging that ALPA violated Title III of the LMRDA by establishing a custodianship over the EWA MEC, should be dismissed for lack of subject matter jurisdiction and for failure to state a claim. In the alternative, ALPA seeks

9

summary judgment.

    1.    Subject matter jurisdiction

ALPA argues that plaintiffs lack standing to assert the LMRDA claim because they cannot show that they have been injured by the custodianship, or that the relief they seek in the 4thAC would redress their alleged injury, and that the court therefore lacks subject matter jurisdiction over this claim.

A party invoking federal jurisdiction bears the burden of establishing that Article III standing – that he/she has suffered in "injury in fact" that is concrete and particularized, actual and imminent, and not conjectural or hypothetical; that the injury is fairly traceable to the challenged action of the defendant; and that it is likely that the injury will be redressed in a favorable decision. Friends of the Earth, Inc. v. Laidlaw Envtl. Sys (TOC), Inc., 528 U.S. 167, 180-81 (2000). A suit brought by plaintiffs without Article III standing is not a "case or controversy," and must be dismissed for lack of subject matter jurisdiction. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 109 (1998); Cetacean Cmty. v. Bush, 386 F.3d 1169, 1175 (9th Cir. 2004).

Plaintiffs allege that ALPA's establishment and maintenance of a custodianship over the EWA MEC violates Title III of the LMRDA. However, the only injury that plaintiffs allege is caused by the custodianship is the creation of a "hostile environment that impairs the ability of the System Board to fairly adjudicate the grievance." ALPA argues that plaintiffs' real complaint is that they disagree with ALPA's president's choice of a custodian, not that they believe that the imposition of the custodianship in any way violated ALPA's Constitution and By-Laws. ALPA also asserts that nothing in the Constitution or By-Laws requires that the president appoint a particular person as custodian of the MEC, but rather, provides that the president "may" appoint former MEC officers as custodian. ALPA argues that there can be no question that the custodianship was instituted for a legitimate object, as required by the LMRDA, and that the alleged injury is purely speculative, as plaintiffs have made no showing that the purportedly "hostile" environment is fairly traceable to the custodianship.

ALPA argues that even if plaintiffs had alleged a non-speculative injury traceable to ALPA's establishment of the custodianship, that injury would not be redressable. In the 4thAC, plaintiffs ask the court to dissolve the custodianship, and argue that ALPA should "relinquish control of the MEC back to the elected representatives of the members." However, ALPA asserts, if the court were to dissolve the custodianship, neither the named plaintiffs nor any of the other former EWA crew members could take over the running of the MEC, because under the ALPA Constitution and By-Laws, furloughed former EWA crew members are "inactive members" and not eligible to serve as EWA MEC officers. Thus, ALPA argues, plaintiffs lack Article III standing to bring the LMRDA claim.

In opposition, plaintiffs argue that ALPA has not established lack of standing. First, they argue that § 464 can provide the foundation for the necessary injury, and that it is not necessary for the court to determine whether plaintiffs have an actual injury resulting from ALPA's "improper maintenance" of the custodianship. They assert that it is sufficient for them to allege that the custodianship has been improperly maintained.

With regard to redressability, plaintiffs contend that § 464 provides "for such relief (including injunctions) as may be appropriate," and that the court has viable options to fashion equitable relief, including replacing Captain Haddock with one or more representatives chosen by the pilots, or with one or more representatives selected in a new election. In the alternative, they assert, the court could simply "order the amendment of a few phrases in the ALPA Constitution," to eliminate the provisions that plaintiffs consider "anti-democratic" (presumably including the provisions relating to the imposition of custodianships and the appointment of custodians).

The court finds that plaintiffs fail to establish constitutional standing to bring their LMRDA Title III claim against ALPA, because they have not identified any injury-in-fact that was caused by the imposition of the custodianship, and because their requested relief is unavailable and will not redress their claimed injury. Plaintiffs' argument that Title III confers its own standing is not persuasive. Constitutional standing cannot be legislatively conferred, but rather must be established by the plaintiff. See Raines v. Byrd, 521 U.S.

11

811, 820 & n.3 (1997).

The alleged injuries suffered by the plaintiffs – the "creat[ion] of a hostile environment that impairs the ability of the System Board to fairly adjudicate the Grievance," as asserted in the 4thAC at ¶ 51, and the "lack of unity of the pilots" resulting from the appointment of Captain Haddock to serve as custodian, as stated in plaintiffs' opposition brief (but not in the 4thAC) – are not injuries resulting from a violation of LMRDA Title III. Title III is concerned with internal union governance, not with the filing of grievances by employees against employers or the arbitration of such grievances; and plaintiffs have not established any protected interest in the "unity" of the pilots.

Moreover, it is clear that plaintiffs' objection is to the appointment of Captain Haddock as custodian (rather than some other person or persons of the pilots' own choosing). Whatever actions of Captain Haddock may have caused a "hostile environment" at the System Board, that "hostile environment" was not caused by ALPA's imposition of a custodianship on the EWA MEC. Plaintiffs have confused the imposition of the custodianship with the appointment of the custodian. The two are not the same, and § 464 provides a cause of action to challenge an improperly imposed <u>custodianship</u>, not to challenge the appointment of an individual who is not universally admired to serve as custodian. ALPA's Constitution leaves the decision as to the identity of the appointed custodian to the discretion of ALPA's president. Thus, the relief requested by plaintiffs – the appointment of one of their own in place of Captain Haddock – is not available under Title III or any other law.

Plaintiffs' argument that the court may "order the amendment of a few phrases in ALPA's Constitution" is not persuasive. The only authority cited by plaintiffs, <u>Brennan v. United Mine Workers of America</u>, 475 F.2d 1293 (D.C. Cir. 1973), involved the judicial resolution of a case in which the union lacked a constitution. In that case, the court ordered adoption of a new constitution. <u>Id.</u> at 1295-96 & n.6. Here, ALPA has a viable and lawful constitution, and there is nothing in Title III of the LMRDA that suggests that the court has the authority to order a labor union to "amend a few phrases" in its constitution

12

1    simply because a plaintiff is unhappy with an action taken pursuant to that constitution.

2          2.      Failure to state a claim

3          ALPA argues that the first cause of action fails to state a claim because the claim is
4    time-barred. The custodianship was instituted on January 17, 2002, and plaintiffs amended
5    the complaint to add the claim for improper imposition and maintenance of a trusteeship on
6    December 15, 2005. ALPA argues that the claim is therefore untimely, whether considered
7    under the six-month statute of limitations that applies to most federal labor claims, see
8    DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 165 (1983), or under California's two-
9    year statute of limitations for personal injury claims, Cal. Civ. P. Code § 335.1, or the three-
10   year statute of limitations for liability arising under a statute, Cal. Civ. P. Code § 338(1).

11         ALPA asserts that while the LMRDA does not specify a limitations period, courts
12   have generally held that either the 6-month limitations period for federal labor claims
13   applies, or the closest analogous state law statute of limitations. See, e.g., Reed v. United
14   Transp. Union, 488 U.S. 319, 323-23 (1989). ALPA argues in addition that the claim
15   cannot be said to relate back to the filing of the original Rachford II complaint, because it
16   does not arise "out of the conduct, transaction, or occurrence set forth or attempted to be
17   set forth in the original pleading," as required by Federal Rule of Civil Procedure 15(c)(2).

18         Plaintiffs assert, however, that the LMRDA cause of action is not time-barred
19   because the 29 U.S.C. § 464 does not contain its own limitations period, and because the
20   custodianship is presently in place. Plaintiffs contend that so long as the trusteeship is in
21   place, an action can be brought under § 464 for improper maintenance of the trusteeship,
22   and argue that there can therefore be no time limitation on filing a § 464 claim so long as
23   the trusteeship remains in place.

24         The court finds that the first cause of action must be dismissed as untimely, as it is
25   barred under even the longest of the potentially applicable statutes of limitations –
26   California's three-year statute of limitations for liabilities arising under statute. Plaintiffs
27   provide no support for their argument that their claim under Title III of the LMRDA is
28   governed by no statute of limitations, simply because the statute itself does not specify a

13

period of limitations and because they are seeking equitable relief. Where a pre-1990 federal statute does not provide an express limitations period, a court must look to state law to select the most analogous statute of limitations, subject to the proviso that the selected limitations period be consistent with federal law and policy. Owens v. Okure, 488 U.S. 235, 239 (1989); see also Wilson v. Garcia, 471 U.S. 261, 266-67 (1985). The court finds that either California Code of Civil Procedure § 335.1 or California Code of Civil Procedure § 338(1) may provide the appropriate limitations period. Since the claim is time-barred under either, ALPA's motion must be granted.

3. Summary judgment

Having found that plaintiffs have failed to establish Article III standing to assert the LMRDA claim, and also that the LMRDA claim is time-barred, it is unnecessary for the court to decide ALPA's alternative motion for summary judgment. Nevertheless, the court provides the following as an alternative basis for its finding that the LMRDA claim is not viable.

ALPA argues that summary judgment should be granted on the first cause of action because the custodianship was properly imposed under, and has been maintained in accordance with, ALPA's Constitution and By-Laws. ALPA contends that the custodianship was established in January 2002 because EWA had permanently furloughed all flight crew members, and that it has continued to the present so that ALPA may resolve all outstanding grievances against EWA, EWW, and CNF.

In opposition, plaintiffs argue that "this custodianship" – by which they mean the appointment of Captain Haddock as custodian – is not necessary and proper, although they are apparently not opposed to the imposition of the custodianship itself.[3] Plaintiffs argue

---

[3] Plaintiffs do argue that the ALPA Constitution does not categorically require a custodianship whenever an airline ceases operations, asserting that an MEC representative need not be an active member of ALPA to remain in elective office if he/she was an active member at the time of nomination and election, that inactive members have voted for MEC representatives, and that an MEC is not always replaced with a custodianship after an airline ceases operations. However, the court finds that none of these arguments creates a disputed issue of material fact with regard to whether ALPA properly imposed the custodianship.

14

that even if ALPA is correct in asserting that it imposed the trusteeship in good faith, their § 464 claim would be valid because they assert both that ALPA improperly <u>imposed</u> the trusteeship, and that ALPA improperly <u>maintained</u> the trusteeship. They claim that the custodianship has been improperly maintained because the appointed custodian is Captain Haddock rather than a representative favored by a majority of the pilots. Plaintiffs also assert that because the custodianship has been in place more than 18 months, the burden of showing that it is properly maintained has shifted to ALPA. Thus, they submit, their concession that the custodianship was originally proper is immaterial.

Finally, plaintiffs argue, pursuant to Federal Rule of Civil Procedure 56(f), that they should be given the opportunity for discovery before the court considers summary judgment. They contend that the fact that EWA has ceased operations does not establish that ALPA's insistence on retaining Captain Haddock as custodian is legitimate, and that they should be permitted to obtain further evidence demonstrating that ALPA's interpretation of its own rules, as evidenced by ALPA's conduct, would allow the court to replace Captain Haddock with elected representatives of the pilots or to take some other action to ensure that ALPA is "democratically governed."

The court finds that the establishment and maintenance of the custodianship over the EWA MEC does not violate Title III of the LMRDA because it was established for a proper purpose under the LMRDA and because the selection of a particular individual as custodian by ALPA's President does not provide a viable Title III claim.

As explained above, Title III of the LMRDA permits a union such as ALPA to impose a trusteeship over subordinate bodies if it does so "in accordance with the constitution and bylaws of the organization which has assumed trusteeship" and "for a purpose that carr[ies] out the legitimate objects of such labor organization." 29 U.S.C. § 462.

The evidence shows that ALPA followed its Constitution and By-Laws in establishing the custodianship over the EWA MEC. Pursuant to Article XXI of the Constitution and By-Laws, ALPA's president notified the Chairman of the EWA MEC on January 9, 2002, that the Executive Council would hold a hearing on whether to implement a custodianship over

the EWA MEC. At the January 14-16, 2002, Executive Council meeting, the Council approved the custodianship. At that time, plaintiff Thomas Rachford was an Executive Vice-President of ALPA and a member of the Executive Council. Together with all the other members of the Executive Council, he voted to impose the custodianship. Plaintiff Mark Luthi also attended and spoke at the hearing, and did not object to the custodianship.

On January 24, 2002, pursuant to his authority under Article XXI of ALPA's Constitution and By-Laws, ALPA's president appointed Captain Haddock as the custodian of the EWA MEC. Captain Haddock has served as the sole custodian since that time. Under Article XXI of ALPA's Constitution and By-Laws, the purpose of the custodianship over the EWA MEC is to provide continuing representation to flight crew members formerly employed by EWA – a shut-down airline – with regard to any outstanding grievance or other collective bargaining matters. ALPA Const., Art. XXI, § 1. As the custodian, Captain Haddock has filed and continues to pursue grievances regarding the permanent shut-down of EWA. Those grievances remain pending.

The custodianship also serves a legitimate purpose in light of EWA's permanent shut-down, because it was imposed for the purpose of providing representation to inactive pilots formerly employed by EWA after the airline had permanently ceased all flight operations. EWA has not resumed flight operations since December 2001, nor has it recalled any of its permanently furloughed flight crew members. The U.S. Department of Transportation has revoked EWA's certificate authority specifically because the airline has been dormant since its shut-down in December 2001. The propriety of the custodianship is supported the fact that EWA permanently ceased operations in December 2001, the fact that EWA cannot resume flight operations, the fact that EWA permanently furloughed all flight crew members in December 2001, and the fact that EWA has not recalled any of the furloughed flight crew members.

Plaintiffs essentially concede that the custodianship was imposed for a proper purpose when it was established. Plaintiffs' argument that ALPA should have appointed one or more of the pilots' own elected representatives as custodian does not support either

16

the claim that the custodianship was improperly imposed nor the claim that it has been improperly maintained.

The election of representatives referred to by plaintiffs had been scheduled by ALPA in November 2001, prior to the announcement of EWA's permanent shut-down. The voting period was scheduled to begin on November 30, 2001, and conclude on January 8, 2002. As of January 8, 2002, the ALPA Executive Council had not yet met to discuss the proposed custodianship and had not yet placed the MEC into custodianship. The two events – the election of MEC representatives, and the decision by ALPA to impose the custodianship – were not related, and ALPA's president was under no obligation to select one or more of the winners of the MEC election as the custodian of the EWA MEC.

Finally, the court denies plaintiffs' request for Rule 56(f) discovery. Plaintiffs have not identified any disputed material facts that are relevant to the question whether the custodianship is proper under Title III.

## CONCLUSION

In accordance with the foregoing, the court finds that the first cause of action must be dismissed for lack of subject matter jurisdiction and for failure to state a claim.[4]

**IT IS SO ORDERED.**

Dated: April 10, 2006

_____
PHYLLIS J. HAMILTON
United States District Judge

---

[4] If the first cause of action were not dismissed for lack of subject matter jurisdiction, the court would grant summary judgment for ALPA.

17