**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                    NORTHERN DISTRICT OF CALIFORNIA

9

10

11

12

13   THOMAS RACHFORD, et al.,

14              Plaintiffs,                    No. C 03-3618 PJH

15         v.                                  **ORDER GRANTING MOTION TO**
                                               **COMPEL ARBITRATION AND**
16   AIR LINE PILOTS ASSOCIATION,              **GRANTING MOTION TO DISMISS**
     INTERNATIONAL, et al.,                    **IN PART AND DENYING IT IN PART**
17
                Defendant.
18   _____/

19         The motion of defendants Emery Worldwide Airlines ("EWA"); Emery Air Freight

20   Corp. d/b/a Emery Air Freight Forwarding, Inc., a/k/a Menlo Worldwide Forwarding, Inc.

21   ("EWW"); and CNF, Inc. ("CNF") to dismiss the third through eleventh causes of action in

22   the fourth amended complaint, and the motion of defendants EWW and CNF for an order

23   compelling arbitration of the second cause of action, came on for hearing before this court

24   on April 5, 2006.  Plaintiffs appeared by their counsel G. Stephen Long, Marty Harper,

25   Andrew Jacob, and David T. Alexander, and defendants appeared by their counsel Michael

26   C. Hallerud.  Having read the parties' papers and carefully considered their arguments and

27   the relevant legal authority, and good cause appearing, the court GRANTS the motion to

28   compel arbitration, and GRANTS the motion to dismiss in part and DENIES it in part.

United States District Court

For the Northern District of California

**BACKGROUND**

This is a proposed class action filed by individuals formerly employed by EWA as pilots and flight engineers.  At the time of the events alleged in the complaint, CNF was the parent company of EWA and EWW.  EWA was a commercial airline that transported freight, primarily for EWW, a freight forwarding company.

On September 28, 2000, the EWA pilots and flight engineers ("the EWA pilots" or "the Emery pilots"), who were represented by the Air Line Pilots Association ("ALPA"), entered into a collective bargaining agreement ("CBA") with EWA.  Also on September 28, 2000, the EWA pilots entered into a "side letter" agreement with EWA and EWW ("the subcontracting letter of agreement" or "LOA"), in which EWW promised to increase its use of EWA to transport its airfreight, and to do so by limiting and gradually reducing its use of outside third-party carriers.

In August 2001, the Federal Aviation Administration ("FAA") shut down EWA's flight operations on a temporary basis, after finding numerous safety violations.  On September 19, 2001, EWA and the FAA entered into a "final settlement agreement" ("FSA") in which EWA stated that it desired to resume commercial air carrier flight operations, and agreed to use its "best efforts" – including providing sufficient manpower and resources – to comply with FAA statutes and regulations.

In January 2002, the Emery MEC[1] filed a grievance against EWA ("the shut-down grievance"), asserting that the cessation of flight operations violated the CBA.  On January 16, 2002, ALPA, acting pursuant to its Constitution and By-Laws, imposed a custodianship on the Emery MEC in accordance with 29 U.S.C. § 462.

On August 4, 2003, 270 former EWA crew members filed the present action, asserting that ALPA, EWA, and EWW had improperly settled grievances filed by ALPA regarding the permanent shut-down.  Plaintiffs alleged a cause of action against ALPA for breach of the duty of fair representation, and a cause of action against EWA and/or EWW

---

[1]   The ALPA Constitution and By-Laws establish "Master Executive Councils" (or "MECs"), which are coordinating and governing organs for members employed by one airline.

1  for breach of the CBA and LOA.  The complaint also alleged that "[i]n taking the actions

2  described herein, [d]efendants EWA and EWW acted as the agents of each other."

3       On November 25, 2003, four of the original 270 plaintiffs – Thomas Rachford, Jon

4  del Turco, Wendy Albright, and Mark Luthi – filed a first amended complaint ("FAC") as a

5  proposed class action, against ALPA, EWA, EWW, and CNF.  The FAC alleged four

6  causes of action – 1) breach of the duty of fair representation, against ALPA; 2) breach of

7  contract (the CBA and LOA), against EWA and/or EWW; 3) intentional interference with

8  contract (the CBA and LOA), against CNF; and 4) negligent interference with contract (the

9  CBA and LOA), against CNF.  The FAC asserted that EWA, EWW, and CNF acted as the

10  agents of each other.

11       On June 30, 2004, following the court's ruling on the motion to dismiss the FAC,

12  plaintiffs filed a second amended complaint ("SAC"), against ALPA, EWA, EWW, and CNF.

13  The SAC alleged four causes of action 1) breach of the duty of fair representation, against

14  ALPA; 2) breach of contract (the CBA and LOA), against EWA and/or EWW; 3) intentional

15  interference with contract (the CBA and LOA), against CNF; and 4) negligent interference

16  with contract (the CBA and LOA), against CNF.  The SAC asserted that EWA, EWW, and

17  CNF were alter egos of each other, and acted as the agents of each other.

18       On September 30, 2004 – October 1, 2004, the court conducted an evidentiary

19  hearing on the question whether there had been a settlement of the shut-down grievance.

20       On October 4, 2004, CNF entered into a stock purchase agreement with a

21  subsidiary of United Parcel Service, Inc. ("UPS").  Plaintiffs allege that pursuant to this

22  agreement, CNF sold its wholly-owned interest in EWW to UPS.  Plaintiffs claim that as a

23  term of this transaction, CNF agreed to indemnify and defend UPS and hold UPS harmless

24  with regard to any claims, liabilities, or judgments relating to the CBA and the LOA.

25       On June 15, 2005, the court issued its findings of fact and conclusions of law

26  following the evidentiary hearing, and concluded that the parties had not reached a

27  settlement of the shut-down grievance.  Based on this finding, the court dismissed the first

28  cause of action against ALPA, and the second cause of action against EWA and EWW.

3

United States District Court

For the Northern District of California

On December 15, 2005, the court granted plaintiffs' motion for leave to file a third amended complaint ("TAC"), alleging a claim against ALPA for improper imposition and maintenance of a trusteeship, and alleging nine causes of action against EWA, EWW, and/or CNF.  On January 24, 2006, pursuant to stipulation, plaintiffs filed the fourth amended complaint ("4thAC"), the present iteration, which is identical to the TAC, with one additional cause of action.  ALPA moved to dismiss the first cause of action, and the motion was granted on April 10, 2006.

The following claims remain:  Plaintiffs allege, in the second cause of action, breach of contract (LOA), against EWW and against CNF as alter ego or as successor to EWW's liability; in the third cause of action, intentional interference with contract (LOA), against CNF and EWA; in the fourth cause of action, negligent interference with contract (LOA), against CNF and EWA; in the fifth cause of action, intentional interference with contract (CBA), against CNF and EWW; in the sixth cause of action, negligent interference with contract (CBA), against CNF and EWW; in the seventh cause of action, third-party beneficiary breach of contract (FSA), against EWA; in the eighth cause of action, intentional interference with contract (FSA), against CNF and EWW; in the ninth cause of action, negligent interference with contract (FSA), against CNF and EWW; in the tenth cause of action, unjust enrichment, against CNF and EWW; and in the eleventh cause of action, unfair competition, in violation of California Business & Professions Code § 17200, against CNF, EWW, and EWA.

Plaintiffs assert that EWA, EWW, and CNF are agents and alter egos of each other, and also assert that although CNF sold EWW to UPS in October 2004, it agreed to accept liability for plaintiffs' claims arising out of EWW's alleged breach of the LOA and is therefore liable under a theory of successor liability.

CNF, EWA, and EWW now seek an order dismissing the causes of action asserted against them for lack of subject matter jurisdiction and for failure to state a claim.  In the alternative, they seek summary judgment.  EWW and CNF also seek an order compelling arbitration of the second cause of action for breach of the LOA.

4

United States District Court

For the Northern District of California

1

**DISCUSSION**

2  A.    Legal Standard

3         1.    Subject matter jurisdiction

4         Subject matter jurisdiction is fundamental and cannot be waived.  Billingsly v. C.I.R.,

5  868 F.2d 1081, 1085 (9th Cir. 1989).  The court is under a continuing duty to dismiss an

6  action whenever it appears that the court lacks jurisdiction.  Id.  Federal courts can

7  adjudicate only those cases which the Constitution and Congress authorize them to

8  adjudicate – those involving diversity of citizenship or a federal question, or those to which

9  the United States is a party.  Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375,

10  377 (1994).

11        When presented with a Rule 12(b)(1) motion, the plaintiff bears the burden of

12  demonstrating that subject matter jurisdiction exists.  See, e.g., Tosco Corp. v.

13  Communities for a Better Env't, 236 F.3d 495, 499 (9th Cir. 2001).  The defendant may

14  either challenge jurisdiction on the face of the complaint or provide extrinsic evidence

15  demonstrating lack of jurisdiction on the facts of the case.  White v. Lee, 227 F.3d 1214,

16  1242 (9th Cir. 2000).

17        2.    Failure to state a claim

18        A court should dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to

19  state a claim only where it appears beyond doubt that plaintiff can prove no set of facts in

20  support of the claim which would entitle the plaintiff to relief.  Conley v. Gibson, 355 U.S.

21  41, 45-46 (1957); Pillsbury, Madison & Sutro v. Lerner, 31 F.3d 924, 928 (9th Cir. 1994).

22  Review is limited to the contents of the complaint.  Allarcom Pay Television, Ltd. v. Gen.

23  Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  Allegations of material fact are taken

24  as true and construed in the light most favorable to the nonmoving party.  Smith v.

25  Jackson, 84 F.3d 1213, 1217 (9th Cir. 1996).  Conclusory allegations of law and

26  unwarranted inferences, however, are insufficient to defeat a motion to dismiss.  Assoc.

27  Gen'l Contractors v. Metro. Water Dist. of So. Cal., 159 F.3d 1178, 1181 (9th Cir. 1998).

28        Motions to dismiss for failure to state a claim are disfavored, see Gilligan v. Jamco

United States District Court

For the Northern District of California

1  Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997), and Rule 12(b)(6) dismissals are proper only

2  in "extraordinary" cases.  United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir.

3  1981).  In dismissing for failure to state a claim, "a district court should grant leave to

4  amend even if no request to amend the pleadings was made, unless it determines that the

5  pleading could not possibly be cured by the allegation of other facts."  Doe v. United States,

6  58 F.3d 494, 497 (9th Cir. 1995) (citations omitted).

7  B.    Defendants' Motion

8         Defendants argue that the claims of tortious interference with contract (the third,

9  fourth, fifth, sixth, eighth, and ninth causes of action) should be dismissed for failure to

10 state a claim because a party to a contract cannot be liable in tort for interference with

11 contract.  Defendants contend that because plaintiffs allege that the corporate defendants

12 are alter egos and agents of each other, they are in effect asserting that each of the

13 corporate defendants is a party to each of the three contractual agreements at issue.

14        Defendants also assert that the CBA-related tort claims (the fifth and sixth causes of

15 action) are preempted by federal law; that plaintiffs have no standing to assert the claims of

16 interference with the FSA (eighth and ninth causes of action); and that plaintiffs fail to

17 allege facts sufficient to state a claim of negligent interference with the LOA (fourth cause

18 of action).

19        Defendants contend that the breach of contract claims (the second and seventh

20 causes of action) must be dismissed for lack of subject matter jurisdiction.  Defendants

21 claim that the plaintiffs lack standing to bring the claim of breach of the FSA (seventh cause

22 of action), and that the court lacks jurisdiction over the claim of breach of the LOA (second

23 cause of action) because that claim must be arbitrated and because CNF is not EWW's

24 "successor."

25        Defendants assert that the claim of unjust enrichment (tenth cause of action) must

26 be dismissed because it is preempted by federal law, because plaintiffs plead that the

27 parties' relationships were governed by express contracts, and because plaintiffs fail to

28 plead facts supporting unjust enrichment.

United States District Court

For the Northern District of California

1    Finally, defendants contend that the unfair competition claim (eleventh cause of

2    action) is preempted by federal law, and fails to state a claim.

3    In addition, defendants argue that under California's choice-of-law principles, Ohio

4    law rather than California law applies to the FSA-related claims (seventh, eighth, and ninth

5    causes of action).

6        1.    The tortious interference with contract claims

7    In the third and fourth causes of action, plaintiffs allege that CNF and EWA

8    intentionally and negligently interfered with the LOA (to which the EWA pilots, EWA, and

9    EWW are named parties).  In the fifth and sixth causes of action, plaintiffs allege that CNF

10   and EWW intentionally and negligently interfered with the CBA (to which the pilots and

11   EWA are named parties).  In the eighth and ninth causes of action, plaintiffs allege that

12   CNF and EWW intentionally and negligently interfered with the contractual relationship

13   established by the FSA (to which EWA and the FAA are named parties).

14   Plaintiffs allege that EWA, EWW, and CNF are alter egos of each other, and that

15   each corporate defendant acted as the agent of the others in taking the actions alleged in

16   the 4thAC.  In the motion to dismiss, defendants argue that both the alter ego allegations

17   and the agency allegations compel dismissal of the six tortious interference claims,

18   because a party cannot interfere with a contract to which it is a party, and because an

19   agent acting on behalf of a corporation cannot be held liable for inducing a breach of the

20   corporation's contract.

21   The court finds that the motion to dismiss must be GRANTED.  Under California law,

22   a party to a contract cannot be liable for interference with the contract.  Only a stranger to a

23   contract may be liable for tortious interference.  See Applied Equip. Corp. v. Litton Saudi

24   Arabia Ltd., 7 Cal. 4th 503, 513-16 (1994); see also Webber v. Inland Empire Invs., Inc., 74

25   Cal. App. 4th 884, 898 (1999) (where defendants are treated as one because they are all

26   owned and controlled by the same defendant, the doctrine that a party cannot interfere with

27   its own contract applies).  Thus, to the extent that the corporate defendants that are not

28   parties to the various contracts are alter egos of each other, they cannot be liable for

7

United States District Court

For the Northern District of California

1   interference.[2]

2        Plaintiffs contend that they have pled their alter ego allegations separately from the

3   interference allegations, and that they are entitled to plead "inconsistent theories."  They

4   argue that if the court finds that the 4thAC does not adequately plead alter ego as an

5   alternative theory, they should be granted leave to amend the complaint to do so.  At the

6   hearing, plaintiffs' counsel also stated that the alter ego allegations were "inadvertently

7   incorporated" into all the substantive claims, and asserted that the alter ego pleadings were

8   intended to apply only to the breach of contract causes of action, not to the tortious

9   interference claims.

10       The 4thAC clearly incorporates the alter ego allegations into each claim for relief.

11  Plaintiffs have not pled alter ego "in the alternative," as they assert, and indeed, there is no

12  way that they can do so.  It is true that under Rule 8(e)(2), a party may "set forth two or

13  more statements of a claim or defense alternately or hypothetically, either in one count or

14  defense or in separate counts or defenses."  Fed. R. Civ. P. 8(e)(2).  A party may also

15  "state as many separate claims . . . as the party has regardless of consistency and whether

16  based on legal, equitable, or maritime grounds."  Id.  Nevertheless, the alter ego doctrine

17  does not create an independent cause of action that can be pled in the alternative with

18  another independent cause of action; it merely serves to identify which parties may be held

19  liable for the misconduct at issue.

20       "A request to pierce the corporate veil is only a means of imposing liability for an

21  underlying cause of action and is not a cause of action in and of itself." Local 159 v.

22  Nor-Cal Plumbing, Inc., 185 F.3d 978, 985 (9th Cir.1999); see also In re Grothues, 226

23  F.3d 334, 337-38 (5th Cir. 2000) (alter ego theory is a remedy to enforce a substantive

24  right, not an independent cause of action).  Put another way, a claim against a defendant

25

26       [2] Defendants argue that Ohio law applies to the claims of tortious interference with the
27  FSA claims.   The court applies California law in this instance, however, because, as
    defendants acknowledge, Ohio courts hold, as do California courts, that only a stranger to a
28  contract may be liable for tortious interference.  See Condon v. Body, Vickers & Daniels, 649
    N.E. 2d 1259, 1265 (Ohio App. 1994).

United States District Court

For the Northern District of California

1  based on the alter ego theory is a derivative of the substantive cause of action against the

2  corporate defendant.  It is "not itself a claim for substantive relief," but rather is a means to

3  "disregard the corporate entity as a distinct defendant and to hold the alter ego individuals

4  liable on the obligations of the corporation where the corporate form is being used by the

5  individuals to escape personal liability, sanction a fraud, or promote injustice."

6  Hennessey's Tavern, Inc. v. American Air Filter Co., Inc., 204 Cal. App. 3d 1351, 1359

7  (1988).

8          Thus, a party that is not an alter ego cannot be liable if it bears no primary liability

9  and there is no other basis for liability asserted.  In the opposition to their motion, plaintiffs

10  seem to be arguing that defendants are alter egos for purposes of some claims, and are

11  not alter egos for purposes of other claims.  But defendants either are or are not alter egos.

12  They cannot be both.  The only amendment possible – albeit one the plaintiffs have not

13  requested – would be for plaintiffs to delete the alter ego allegations from the complaint.

14  However, the unacceptable result of permitting such amendment would be to return the

15  parties to the position they were in at the time that the FAC was the operative complaint –

16  that is, before the court granted plaintiffs' motion for leave to file a second amended

17  complaint alleging that CNF, EWW, and EWA are alter egos of each other.

18          The court finds further that defendants' motion must be GRANTED with regard to

19  the allegation that CNF, EWA, and EWW acted as agents of each other.  Under California

20  law, an agent acting on behalf of a corporation cannot be liable for inducing a breach of the

21  corporation's contract, because the agent's relationship to the corporation is privileged.

22  Shoemaker v. Myers, 52 Cal. 3d 1, 24 (1990).[3]  In other words, an agent acting on behalf of

23  a corporation is privileged to induce breach of the principal's contract.  Applied Equip., 7

24  Cal. 4th at 512.  Under the related "agent's immunity rule," the agents of a corporation

25  cannot conspire with their corporate principal where they act in their official capacities on

26  behalf of the corporation, and not as individuals for their individual advantage.  Id. & n.4

27  _____

28      [3]  The law in Ohio is the same.  See Andrews v. Carmody, 761 N.E. 2d 1076, 1081-82
(Ohio App. 2001).

9

United States District Court

For the Northern District of California

1    (quotations and citations omitted).

2        Plaintiffs contend that they did not intend to allege tortious interference based on

3    agency.  They assert that the agency allegation is directed only at the breach of contract

4    claims.  However, the agency allegation states, in full, "[i]n taking the actions described

5    herein, Defendants EWA, EWW, and CNF acted as the agents of each other."  Moreover,

6    each version of the complaint has included exactly the same allegation.  It is not clear to

7    the court how that allegation – which appears in the section labeled "Parties" and is

8    incorporated by reference in all causes of action alleged in the 4thAC – can be interpreted

9    as applying only to the breach of contract claims.  The court finds, however, that

10   amendment would be futile, as the tortious interference claims cannot proceed because of

11   the alter ego allegations, as discussed above.

12       As an additional basis for dismissing the claims of tortious interference with the CBA

13   (fifth and sixth causes of action), the court finds that those claims are preempted by the

14   Railroad Labor Act ("RLA"), 45 U.S.C. §§ 151, et seq.  The RLA, which was extended in

15   1936 to cover the airline industry, is similar to the National Labor Relations Act, in that it

16   regulates the process of negotiations for the creation and modification of CBAs.  Air

17   Transp. Ass'n. of America v. City and County of San Francisco, 266 F.3d 1064, 1075 (9th

18   Cir. 2001).  The RLA is also similar to the Labor Management Relations Act ("LMRA") in

19   that it creates a system for dispute resolution for grievances arising from CBAs.  Id. (citing

20   45 U.S.C. § 153(i)).

21       While the RLA (unlike the LMRA) contains no specific preemption language, the

22   courts have interpreted the RLA to preempt state laws that prohibit collective bargaining by

23   railroad and airline employees or that otherwise frustrate the purposes of the RLA, and to

24   preempt state law causes of action that depend upon interpretation of CBAs.  Id. at 1076.

25   Here, defendants argue that plaintiffs' claims of interference with the CBA are preempted

26   because resolution of those claims will require the court to interpret the CBA.

27       The elements of intentional interference with contract are: 1) a valid contract

28   between plaintiff and a third party; 2) the defendant's knowledge of this contract;

**United States District Court**

For the Northern District of California

3) intentional acts by the defendant designed to induce a breach or disruption of the

contractual relationship; 4) actual breach or disruption of the contractual relationship; and

5) resulting damage.  Reeves v. Hanlon, 33 Cal. 4th 1140, 1148 (2004).  To establish the

claim, the plaintiff need not prove that a defendant acted with the primary purpose of

disrupting the contract, but must show the defendant's knowledge that the interference was

certain or substantially certain to occur as a result of his or her action.  Id.  The plaintiff

must also show that the contract "was breached and abandoned by reason of the

defendant's wrongful act and that such act was the moving cause thereof."  Dryden v.

Tri-Valley Growers, 65 Cal. App. 3d 990, 997 (1977).

The court knows of no way, without interpreting the CBA or applying its terms, to

determine whether CNF and EWW engaged in intentional acts designed to induce a breach

of the CBA or disruption of the contractual relationship, which acts did in fact result in an

actual breach of the CBA or disruption of the contractual relationship.  In other words, in

order to determine whether CNF and EWW interfered with the CBA, or to determine

whether the contractual relationship was "disrupted," the court would have to ascertain the

nature of the contractual relationship, which would necessitate interpreting the CBA or

applying its terms.  See Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252-63 (1994).

California recognizes a cause of action for negligent interference with prospective

economic advantage, see J'Aire Corp. v. Gregory, 24 Cal.3d 799, 806 (1979), although it is

not settled that California recognizes negligent interference with contract as a separate

tort.[4]  "The tort of negligent interference with economic relationship arises only when the

_____

[4]  The California Supreme Court recognizes intentional interference with contract and intentional interference with prospective economic advantage as separate torts.  See Reeves, 33 Cal. 4th at 1148-53.  The tort of interference with contractual relations appears to be a species of the broader tort of intentional interference with prospective economic advantage. See Buckaloo v. Johnson, 14 Cal. 3d 815, 823, 122 (1975).  The difference is that the former requires the existence of a binding contract.  Id.  However, the California Supreme Court has previously rejected a cause of action for negligent interference with contract.  See Fifield Manor v. Finston, 54 Cal. 2d 632, 634-37 (1960).  In Fifield, the court stated that courts have generally refused to recognize a cause of action based on negligent, as opposed to intentional, conduct that interferes with the performance of a contract between third parties or renders its performance more expensive or burdensome, because to do so "would constitute an unwarranted extension of liability for negligence." Id. at 636-37.  The California Supreme Court

United States District Court

For the Northern District of California

1  defendant owes the plaintiff a duty of care." <u>Stolz v. Wong Communications Ltd.</u>

2  <u>Partnership</u>, 25 Cal. App. 4th 1811, 1825 (1994).  The plaintiff must allege that the

3  defendant had a duty to exercise care in light of the plaintiff's contractual relationship with a

4  third party.  <u>J'Aire Corp.</u>, 24 Cal. 3d at 803-04.  Among the criteria for establishing a duty of

5  care is the "blameworthiness" of the defendant's conduct; in addition, the plaintiff must

6  show that the defendant's conduct was independently wrongful apart from the act of

7  interference itself.  <u>Lange v. TIG Ins. Co.</u>, 68 Cal. App. 4th 1179, 1187 (1998).

8          The tort of negligent interference with prospective economic advantage is

9  established where a plaintiff demonstrates that (1) an economic relationship existed

10 between the plaintiff and a third party which contained a reasonably probable future

11 economic benefit or advantage to plaintiff; (2) the defendant knew of the relationship and

12 was aware or should have been aware that if it did not act with due care its actions would

13 interfere with this relationship and cause plaintiff to lose the probable future economic

14 benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such

15 negligence caused damage to plaintiff in that the relationship was actually interfered with or

16 disrupted and plaintiff lost in whole or in part the economic benefits or advantage

17 reasonably expected from the relationship.  5 Witkin, <u>Summary of Cal. Law</u> (9th ed. 1988)

18 Torts, §§ 661-62.

19         As with the claim of intentional interference with contract, the court finds that

20 determining whether CNF and EWW interfered with or disrupted the economic/employment

21 relationship between plaintiffs and EWA (delineated by the terms of the CBA) by failing to

22 use ordinary care in their own relationship with plaintiffs will require the court to interpret the

23 CBA or to apply its terms.  Thus, the claim is preempted by the RLA.

24         As a further basis for seeking dismissal of the claim of intentional interference with

25 ───────────────────

26 has never overruled the holding of <u>Fifield Manor</u>.  <u>See LiMandri v. Judkins</u>, 52 Cal. App. 4th
   326, 349 (1997).  The court notes in addition that while <u>California Civil Jury Instructions (BAJI)</u>

27 provides instructions for intentional interference with prospective economic advantage (BAJI
   7.82) and negligent interference with prospective economic advantage (BAJI 7.82.1), it

28 provides but a single instruction for interference with contractual relations (BAJI 7.81), which
   includes an intent/knowledge element.

United States District Court

For the Northern District of California

the FSA (eighth cause of action), defendants argue that because plaintiffs were not parties

to the FSA, they lack standing to assert this claim.  Plaintiffs respond that they bring this

claim as third-party beneficiaries of the FSA, asserting that they part of the class of persons

for whose benefit the agreement was made.  For reasons discussed below with regard to

the claim of breach of contract (FSA), the court does not decide this issue at this time.

As an additional basis for seeking dismissal of the claim of negligent interference

with the FSA (ninth cause of action), defendants argue that Ohio law governs the FSA-

related claims, and that Ohio does not recognize a cause of action for negligent

interference with contract.  Because the court finds that all the tortious interference claims

must be dismissed because of the alter ego and agency allegations, the court does not

decide which state's law applies to the claim of negligent interference with the FSA.

2.      The breach of contract claims

Defendants contend that the breach of contract claims (the second and seventh

causes of action) must be dismissed for lack of subject matter jurisdiction.  Defendants

claim that the plaintiffs lack standing to bring the claim of breach of the FSA (seventh cause

of action), and that the court lacks jurisdiction over the claim of breach of the LOA (second

cause of action) because that claim must be arbitrated and because CNF is not

EWW's successor.

a.      breach of FSA

In the 4thAC, plaintiffs allege that EWA "failed to observe its implied and explicit

covenants of good faith and fair dealing" arising under the FSA by deliberately failing to

provide "sufficient manpower and resources to become qualified and capable of conducting

its operations in compliance with FAA governing statutes and regulations," thereby

breaching its obligations under the FSA.  As indicated above with regard to the tortious

interference (FSA) claims, plaintiffs assert that the EWA pilots were third-party beneficiaries

of the FSA.  Defendants argue, however, that plaintiffs lack standing to bring the claim of

breach of the FSA, because they were not the intended beneficiaries of the agreement.

California requires that an alleged third-party beneficiary be an intended beneficiary.

United States District Court

For the Northern District of California

1    Bancomer, S.A. v. Superior Court, 44 Cal. App. 4th 1450, 1458 (1996) (contracting parties

2    must have intent to benefit third party and such intent must appear in the contract).  On this

3    point, Ohio law is to the same effect.  See TRINOVA Corp. v. Pilkington Bros. P.L.C., 638

4    N.E. 2d 572, 577 (Ohio 1994); Anderson v. Olmstead Utility Equip., Inc., 573 N.E. 2d 626,

5    631 n.5 (Ohio 1991).  Relying on Ohio law, defendants assert that plaintiffs can qualify as

6    third-party beneficiaries only if they can show that EWA intended to benefit them directly by

7    negotiating and executing the FSA, and that EWA intended to discharge a preexisting duty

8    to plaintiffs by entering into the FSA.  Defendants contend that plaintiffs do not allege these

9    elements in the 4thAC, and that the evidence shows that EWA did not intend to benefit

10   plaintiffs by entering into the FSA.

11        In support, defendants cite to the Declarations of Gerard Trimarco ("Trimarco"), E.

12   Tazewell Ellet ("Ellett"), and Sheldon Kline ("Kline").  Trimarco is employed by UPS, and

13   was formerly employed by CNF.  He was co-President of EWA as of 1998, and CEO as of

14   2000.  He remained CEO of EWA until December 2004.  He states that in August 2001, the

15   FAA demanded a meeting with EWA officials.  At the meeting on August 11, 2001, the FAA

16   told Trimarco and the others present that unless EWA agreed to a grounding of its flight

17   operations until certain safety issues had been resolved, the FAA would revoke EWA's air

18   carrier certificate.  Trimarco chose the grounding.

19        Trimarco then negotiated the terms of the interim settlement agreement ("ISA") with

20   the FAA, on behalf of EWA, and signed it in Dayton, Ohio, on August 13, 2001.  The ISA

21   obligated the parties to negotiate a final settlement agreement (the FSA) no later than 30

22   days from the date of the ISA.  Trimarco states that during the negotiation for the ISA, there

23   was no mention or discussion of the ISA's effect on or benefit to any individual EWA

24   employee or any group or class of EWA employees.  He claims that he did not negotiate or

25   execute either the ISA or the FSA to benefit specifically the EWA pilots or any other group

26   of EWA employees.

27        Ellett is an attorney who has represented EWA since 1998.  He was present at the

28   August 11, 2001, meeting between EWA representatives and the FAA.  He confirms that

14

United States District Court

For the Northern District of California

the FAA presented EWA with the option of agreeing to a shut-down or having its certificate revoked, and that the parties' discussion of the ISA did not include any reference to or mention of the ISA's effect on or benefit to any group of EWA employees.  Ellett states that when he negotiated and executed the ISA, he did not consider its potential effect on any group of EWA employees.  Ellett also negotiated and executed the FSA, and asserts that there was no discussion during the negotiation or execution of the FSA regarding its effect on or benefit to any group of EWA employees.

Kline is a partner at the law firm of Thelen Reid & Priest, LLP, counsel for the corporate defendants herein.  He has served as outside counsel for EWA since 1998.  He participated in the "effects" bargaining with ALPA and EWA in August and September 2001, following the shut-down of EWA by the FAA.  He states that he was aware that EWA was negotiating the terms of the FSA during August and September 2001, but he did not participate in those negotiations.  He asserts that he never presented any ALPA representative with a draft of the FSA.  He recalls that the subject of the FSA did come up during the effects bargaining, but says it was only after the FSA had been executed on September 20.  He claims that no EWA bargainer or ALPA representative stated at any meeting that the FSA was intended to benefit the EWA pilots specifically or any other class of EWA employees.

In opposition, plaintiffs argue that they are third-party beneficiaries to the FSA because they are in the class of persons for whose benefit the agreement was made.  They claim that they were third-party beneficiaries for two reasons – because the FSA was allegedly the result of an FAA investigation prompted by the crash of an Emery plane in Sacramento in February 2000, and was also the result of "safety concerns" raised by plaintiffs; and because the FSA indicates that it was intended to remedy "[a]lleged [v]iolations of 49 U.S.C. § 40101, et seq., [the Federal Aviation Act] and 14 C.F.R. § 43, 119, and 121."  Plaintiffs contend that the Federal Aviation Act was intended by Congress to improve air safety and to prevent or reduce aviation accidents, and that the Act and its regulations create an actionable duty on the part of FAA personnel to persons in the zone

15

United States District Court

For the Northern District of California

1    of danger – whether air passengers, carrier pilots, and personnel.

2         Plaintiffs also request, pursuant to Federal Rule of Civil Procedure 56(f), that they be

3    permitted to conduct discovery in order to oppose the statements in the Trimarco, Ellett,

4    and Kline declarations – specifically, those statements relied upon by defendants to

5    establish that Ohio law should be applied to the claims of breach of contract (FSA) and

6    intentional and negligent breach of contract (FSA), and to establish that the FSA was not

7    intended to benefit the EWA pilots.  Plaintiffs contend that they need discovery to determine

8    where the FSA was negotiated, and whether it was negotiated to benefit the EWA pilots or

9    any other group of EWA employees.

10        Although plaintiffs' argument that they were the intended beneficiaries of the FSA is

11   less than compelling, the court finds that the motion to dismiss the breach of FSA claim

12   must be DENIED.  It is true, as defendants argue, that plaintiffs provide no competent

13   evidence establishing that the FSA was the direct result of the February 2000 plane crash.

14   Moreover, even if the crash had prompted the FAA's investigation, that fact would not

15   compel the conclusion that the EMERY pilots were the intended beneficiaries of the FSA,

16   as opposed to all other EWA employees, or as opposed to EWW's customers or the

17   general public.  The asserted "indication" that the FSA was intended to remedy "alleged

18   violations" of the FAA and its regulations is based solely on the fact that the caption of the

19   FSA is designated, "In the Matter of: Alleged Violations of 49 U.S.C. § 40101, et seq."  This

20   is not an indication that the intended purpose of the FSA was to benefit the EWA pilots.

21        On the other hand, plaintiffs are correct in asserting that they have not had the

22   opportunity to conduct discovery on this issue.  In particular, it would be unfair for the court

23   to find that plaintiffs lacked standing based on defendants' declarations, but without

24   allowing plaintiffs an opportunity to obtain information in discovery to oppose defendants'

25   evidence.  The court notes, in addition, that while plaintiffs refer to this as a Rule 56(f)

26   motion, it is actually primarily a motion for jurisdictional discovery, as defendants appear to

27   be seeking dismissal of the FSA-related claims for lack of standing, under Federal Rule of

28

United States District Court

For the Northern District of California

1    Civil Procedure 12(b)(1).[5]

2              b.    breach of LOA

3        In the second cause of action, plaintiffs allege breach of contract (the LOA) against

4    EWW and against CNF as alter ego <u>or</u> as successor to EWW's liability (based on the

5    indemnity provision in a Stock Purchase Agreement under which UPS acquired EWW stock

6    from CNF in 2004).  Defendants argue that the court lacks jurisdiction over this claim

7    because the LOA provides for mandatory arbitration, which provision defendants assert is

8    enforceable under the Federal Arbitration Act.

9        The LOA states that it is an agreement between EWW and the airline pilots in the

10   service of EWA, as represented by ALPA.  Paragraph 2 of the LOA provides as follows:

11

12        The parties shall meet to exchange data needed for the calculation of block
         hour totals, percentages and proportions as well as to establish procedures to
13        verify compliance with this Letter of Agreement.  In the event that the parties
         are unable to agree upon procedures or if a dispute arises, all such matters,
14        including remedy, shall be referred to Permanent Umpire, Richard Kasher,
         who shall promptly hear and resolve the dispute.  In the event that Umpire
15        Kasher shall become unwilling or unable to continue in this capacity, the
         parties will agree upon Umpire George Nicolau.

16       Defendants contend that the Ninth Circuit interprets such agreements broadly, and

17   that under Ninth Circuit rulings an agreement such as this – providing that "all" disputes

18   over "compliance with this Letter of Agreement" "shall be referred" to binding arbitration –

19   should be arbitrated.  Defendants argue that the only job for the court is to determine

20   whether a valid agreement to arbitrate exists, and if it does, whether the agreement

21   encompasses the disputed issue.  Defendants contend that the agreement is valid, and that

22

23   _____

24        [5]  Plaintiffs also request leave to conduct discovery to establish the meaning of the
     arbitration provision in the LOA, to determine whether the System Board actually found that
     the grounding of EWA in August 2001 was caused by a "force majeure," and to oppose
25   defendants' arguments regarding choice of law.  This request is denied.  As explained below,
     the court finds that the LOA requires arbitration.  Further, there is no dispute that the System
26   Board found that the August 2001 grounding was caused by a "force majeure."  In addition, the
     choice-of-law issue is not dispositive with regard to the FSA-related claims, as the court finds
27   that the tortious interference claims must be dismissed based on the allegations of agency and
     alter ego liability, while resolution of the breach of contract claim will turn in part on whether
28   plaintiffs can show they were the intended beneficiaries of the FSA – an element required for
     third-party beneficiary breach of contract claims under both Ohio and California law.

United States District Court

For the Northern District of California

1   it clearly encompasses the claim of breach of the LOA.

2        Defendants also assert that ALPA has taken the position that all disputes under the

3   LOA must be arbitrated, and that the System Board arbitrator previously found so as well.

4   Defendants contend that plaintiffs are bound by ALPA's commitments to the LOA, because

5   ALPA is or was plaintiffs' statutory bargaining agent.

6        In opposition, plaintiffs argue that the arbitration clause does not apply to the claim

7   of breach of the LOA.  They argue that ¶ 2 of the LOA merely states that the parties will

8   work out the procedural details of exchanging data under ¶ 2, and will arbitrate if they are

9   unable to agree on these details.  Plaintiffs claim that they have not raised any issue

10  relevant to ¶ 2 in their claims in this lawsuit, noting that the procedure for measuring the

11  proportion of cargo flow by EWA compared with other carriers is not at issue.  Instead, they

12  argue, the LOA claim raises issues wholly unrelated to block hours – specifically, whether

13  plaintiffs incur benefits as a party or as a third-party beneficiary, whether plaintiffs are

14  bound by ALPA's promise in the LOA not to assert claims against EWW; and whether

15  EWW is excused from breach of the LOA because of the FAA order.

16       Plaintiffs assert that the language of the LOA does not reflect the parties' intent to

17  arbitrate disputes and to be bound by the arbitration decisions that resolve such disputes.

18  Plaintiffs claim that an EWA representative stated before the System Board in April 2002

19  that it was EWA's position that the jurisdiction of the umpire specified in ¶ 2 "is to decide

20  disputes under paragraph two of that letter with respect to the application of the formula

21  and not issues with respect to the violation of the agreement itself."  Plaintiffs do not dispute

22  that ¶ 2 of the LOA is a "valid agreement to arbitrate" under the FAA.  They assert only that

23  their claim for breach of the LOA is viable because the LOA's language does not

24  "unambiguously" reflect the parties' intent to arbitrate all disputes.

25       The court finds that the motion to compel arbitration of the breach of LOA claim must

26  be GRANTED.  The Federal Arbitration Act has established a rule of contract construction

27  favoring arbitration, and "as a matter of federal law, any doubts concerning the scope of

28  arbitrable issues should be resolved in favor of arbitration."  Moses H. Cone Mem'l Hosp. v.

United States District Court

For the Northern District of California

1  Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).  Additionally, "ambiguities as to the scope

2  of the arbitration clause itself [must be] resolved in favor of arbitration."  Mastrobono v.

3  Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995) (citing Volt Info. Sciences, Inc. v.

4  Bd. of Trustees of Leland Stanford Jr. Univ., 489 U.S. 468, 476 (1989)).

5          The court is persuaded by the evidence showing that ALPA has taken the position

6  that all disputes under the LOA must be arbitrated, and that the arbitrator so found as well.

7  While it is true that the language of the LOA is somewhat ambiguous, the court must

8  resolve this ambiguity in favor of arbitration.

9          The court finds further that CNF is not EWW's successor.  Plaintiffs allege that CNF

10  is a "successor" to EWW's alleged liability based on an indemnity provision in a stock

11  purchase agreement under which a subsidiary of UPS purchased EWW stock from CNF in

12  2004.  Plaintiffs also assert that a statement in one of CNF's filings with the Securities and

13  Exchange Commission – that CNF agreed to "indemnify, defend, and hold harmless" UPS

14  with respect to any claims relating to the CBA – proves CNF's status as successor to

15  EWW's liability.  In their opposition to defendants' motion, plaintiffs concede that CNF is not

16  a "successor" as that word is defined in the legal context.  Nevertheless, they argue that

17  CNF is a successor "as a practical matter" because CNF assumed EWW's liability for

18  breach of the LOA or for any other claim for which EWW might be found liable.

19          As defendants have pointed out, however, the stock acquisition did not extinguish

20  EWW, and EWW as a legal entity did not change by virtue of the stock purchase.  In

21  addition, an indemnity provision does not create successor liability by imputing the

22  indemnitee's liability to the indemnitor; rather, such a provision simply allows the

23  indemnitee to recover from the indemnitor on becoming liable.  CC-Calif. Plaza Assocs. v.

24  Paller & Goldstein, 51 Cal. App. 4th 1042, 1054 (1996).

25          A "successor," by contrast, "succeeds" to the responsibilities of another.  The

26  general rule is that when one corporation sells or transfers all its assets to another

27  corporation, the latter is not liable for the debts and liabilities of the transferor unless

28  1) there is an express or implied agreement of assumption, 2) the transaction amounts to a

United States District Court

For the Northern District of California

1  consolidation or merger of the two corporations, 3) the purchasing corporation is a mere

2  continuation of the seller, or 4), the transfer of assets to the purchaser is for the fraudulent

3  purpose of escaping liability for the seller's debts.  Ray v. Alad Corp., 19 Cal. 3d 22, 28

4  (1977).  In the event that one of those exceptions applies, the successor is the purchaser or

5  transferee, not, as plaintiffs would have it here, the seller or transferor.

6          3.      The unjust enrichment claim

7          In the tenth cause of action, plaintiffs assert that CNF and EWW received a

8  "substantial financial benefit from reduced expenses" as a result of EWA's cessation of

9  flight operations and use of subcontractors to carry EWW's freight, and that plaintiffs and

10  the "CNF class" incurred financial damages as a result.  Defendants assert that the unjust

11  enrichment claim must be dismissed because it is preempted by the RLA, and because

12  plaintiffs fail to plead facts supporting the claim.

13          Defendants contend that the unjust enrichment claim is preempted because

14  plaintiffs' claimed losses are based on their loss of employment, and their right of

15  employment was governed directly by the CBA.  Defendants argue that the alleged unjust

16  gain conferred on the corporate defendants therefore arises from a breach of the CBA,

17  which means that any unjust enrichment claim will require interpretation and application of

18  the CBA.

19          Plaintiffs assert, however, that the unjust enrichment claim can be resolved without

20  interpreting the CBA.  They cite two cases – Consolidated Rail Corp. (Conrail) v. Railway

21  Labor Executives' Ass'n, 491 U.S. 299, 305 (1989); and Hawaiian Airlines v. Norris, 512

22  U.S. at 256 – for the proposition that the RLA's mechanism for resolving minor disputes

23  does not preempt causes of action to enforce rights that are independent of the CBA.

24          The court finds that the motion must be GRANTED.  The unjust enrichment claim

25  explicitly incorporates all preceding allegations of the 4thAC, including that an express

26  contract governs the relationship between the parties.  Unlike the plaintiff in Hawaiian

27  Airlines, who alleged a state law claim of retaliatory discharge because of whistleblower

28  activities, the plaintiffs in the present case allege loss of "employment opportunity" of a

20

United States District Court

For the Northern District of California

1   value comparable to the "benefit" conferred on defendants by the cessation of EWA's flight

2   operations.  Because plaintiffs' employment at EWA was governed by contract – the CBA –

3   any claim of loss of "employment opportunity" caused by the shutdown of EWA would

4   require an analysis and interpretation of the CBA to ascertain the nature and extent of

5   plaintiffs' employment rights.  Accordingly, the claim must be dismissed.

6       As an alternative basis for seeking dismissal, defendants argue that under the facts

7   alleged, plaintiffs cannot maintain a cause of action for unjust enrichment.  The elements of

8   a claim of unjust enrichment are receipt of a benefit and unjust retention of the benefit at

9   the expense of another.  Ghirardo v. Antonioli, 14 Cal. 4th 39, 51 (1996); Lectrodryer v.

10  SeoulBank, 77 Cal. App. 4th 723, 726 (2000).[6]

11      Defendants argue that plaintiffs cannot plead that they "conferred a benefit" on any

12  corporate defendant for which they were not compensated.  Indeed, defendants note,

13  rather than claiming that they conferred a benefit on defendants, plaintiffs allege elsewhere

14  in the 4thAC that the corporate defendants lost money.  Defendants also argue that the

15  purpose of an unjust enrichment claim is not to compensate a plaintiff for loss or damage

16  suffered by him – the essence of the claim in the 4thAC – but to compensate that plaintiff

17  for the benefit he has conferred on the defendant.

18      Plaintiffs contend that they have properly pled unjust enrichment under California

19  law.  They assert that the 4thAC alleges that CNF and EWW received a substantial

20  financial benefit by saving about $350 million from breaching the CBA and LOA, while

21  plaintiffs lost employment opportunity of comparable value.  According to plaintiffs, the

22  "injustice" here is that defendants received this benefit only by violating federal air safety

23  laws and regulations, causing the FAA to ground EWA and purportedly creating an excuse

24  _____

25      [6] Defendants argue that Ohio law applies to this cause of action, because Ohio has a
    stronger interest in applying its law than does California.  To establish a claim of unjust
26  enrichment under Ohio law, a plaintiff must demonstrate a) a benefit conferred by the plaintiff
    on the defendant, b) knowledge by the defendant of this benefit, and c) retention of the benefit
27  by the defendant under circumstances where it would seem unjust to do so.  Johnson v.
    Microsoft Corp., 834 N.E. 2d 791, 799 (Ohio 2005).  Because the court finds that the unjust
28  enrichment claim is preempted by the RLA, the court does not decide the issue of choice of
    law.

for breach of the CBA and LOA.

The court agrees with defendants that plaintiffs have not stated a claim for unjust enrichment, as they have not alleged that they themselves conferred a benefit for which they were not compensated, on either CNF or EWW.  Because the court finds that this claim is preempted, however, amendment would be futile.

4.    The § 17200 claim

In the eleventh cause of action, plaintiffs allege that the actions of the corporate defendants, including the acts defendants performed as alter egos of each other, constituted illegal and unfair business acts and practices within the meaning of Business & Professions Code § 17200.  Plaintiffs allege further that as a result of these violations of § 17200, defendants have unjustly enriched themselves at the expense of the class members, and should be required to disgorge their illegal gains and make full restitution to the class members.  In their motion to dismiss, defendants contend that the unfair competition claim is preempted by the RLA, and also fails to state a claim.

Plaintiffs assert that the CBA and the LOA gave them a vested interest in future employment with EWA.  They claim that the CBA gave plaintiffs "the right to perform 'all present and future revenue flying performed by Emery Worldwide Airlines' with some exceptions;" and that the LOA provided the pilots with the right to require EWW to give an increasing amount of its cargo to EWA because EWW agreed that it would "reduce the proportion of scheduled block hours flown by airline contractors (other than EWA and Ryan)."  Plaintiffs contend that by virtue of the LOA, they were "guaranteed" work because EWW was obligated to ship air cargo via EWA, and EWA was obligated to use plaintiffs as pilots.

Plaintiffs assert that the "effect" of the CBA and the LOA was that they obtained, in exchange for agreeing to the other terms of the CBA, a "valuable right to an employment opportunity that was not subject to any condition precedent – other than events that were not under Defendants' control."  Thus, plaintiffs assert, they had a "vested interest," which they lost when EWA stopped flying, and it is this "vested interest" that they seek to recover

22

United States District Court

For the Northern District of California

1   under the § 17200.

2       The court finds that the motion must be GRANTED.  Because plaintiffs assert that

3   the alleged "unlawful" and "unfair" conduct giving rise to the § 17200 claim was a violation

4   of their contract right to employment opportunities – which necessarily requires

5   interpretation and application of the CBA – the § 17200 claim is preempted by the RLA.  In

6   order to establish that they are entitled to recover under § 17200, plaintiffs must show that

7   the CBA entitled them to continuing employment during the period of time up to the

8   December 2001 cessation of operations of EWA, and must then show a breach of the CBA

9   entitling them to payment of wages they would have earned but for defendants' alleged

10  breach of the CBA.

11      As an alternative basis for dismissal, the court finds that this cause of action fails to

12  state a claim.  A UCL action is "an equitable action by means of which a plaintiff may

13  recover money or property obtained from the plaintiff . . . through unfair or unlawful

14  business practices," and is not "an all-purpose substitute for a tort or contract action."

15  Cortez v. Purolator Air Filtration Prods. Co., 23 Cal. 4th 163, 173 (2000).  Section 17200

16  establishes three types of "unfair competition" – unlawful, unfair, and fraudulent acts or

17  practices.  Schnall v. Hertz Corp., 78 Cal. App. 4th 1144, 1153 (2000).

18      "Unlawful" practices are those practices that are prohibited by law, whether "civil or

19  criminal, federal, state, or municipal, statutory, regulatory, or court-made."  Saunders v.

20  Superior Court, 27 Cal. App. 4th 832, 839 (1994).  Plaintiffs do not allege that defendants

21  have engaged in any practice forbidden by law.  Nor have plaintiffs stated a claim for

22  "unfair" or fraudulent business practices.  An "unfair" business practice is "conduct that

23  threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of

24  those laws because its effects are comparable to or the same as a violation of the law, or

25  otherwise significantly threatens or harms competition."  Cel-Tech Communications, Inc. v.

26  Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 186-87 (1999).  A fraudulent business

27  practice is one that is likely to deceive the public.  Bank of the West v. Superior Court, 2

28  Cal. 4th 1254, 1267 (1992).  Plaintiffs do not allege any conduct that threatens or harms

competition, or that is likely to deceive the public.

In addition, to the extent that plaintiffs seek damages, the § 17200 claim is improper, as damages are not available for a violation of § 17200. Cortez, 23 Cal. 4th at 173-74. Plaintiffs assert that they seek restitution or disgorgement. An order for restitution is one "compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken." Kraus v. Trinity Mgmt Servs., Inc., 23 Cal. 4th 116, 126-27 (2000). Here, however, the 4thAC does not allege that defendants obtained money from the plaintiffs through an unjust business practice. In seeking "restitution" of their "vested" property interests, by which they mean the right to future employment with EWA, plaintiffs appear to be simply seeking damages.

## CONCLUSION

In accordance with the foregoing, the court hereby GRANTS the motion to compel arbitration, and GRANTS the motion to dismiss in part and DENIES it in part. The motion to dismiss is granted as to all causes of action except the seventh cause of action for breach of the FSA. The dismissal is WITH PREJUDICE.

Because the court must consider evidence submitted by the parties in ruling on the motion to dismiss the breach of the FSA claim, and because plaintiffs have not had an opportunity to conduct discovery on the question whether the contracting parties intended to benefit the plaintiffs, the court will permit the parties 60 days in which to conduct discovery. Defendants may then file a motion for summary judgment on that issue only, no later than September 20, 2006. The motion shall be noticed for hearing on October 25, 2006.

**IT IS SO ORDERED.**

Dated: June 16, 2006

_____
PHYLLIS J. HAMILTON
United States District Judge

United States District Court
For the Northern District of California

24